# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | | |
|---|---|---|
| Marlin Elrico Coffy, Sr., | ) | Case No. 2:23-cv-00236-BHH-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Officer Michael S. Hannon, Jr.. #692;[1] | ) | **REPORT AND RECOMMENDATION** |
| PFC Kevin Dani Herbst, #681; | ) | |
| Sgt. Robert Blaschke, #665; | ) | |
| FTO Douglas Richards, #717; | ) | |
| and PFC Ditrrich,[2] | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Marlin Elrico Coffy, Sr. ("Plaintiff"), a state prisoner proceeding *pro se* and *in forma pauperis*, brings this action seeking relief pursuant to 42 U.S.C. § 1983. Before the Court is a Motion for Summary Judgment filed by Defendants PFC Kevin Dani Herbst, Sgt. Robert Blaschke, FTO Douglas Richards, and PFC Dittrich ("Defendants") (Dkt. No. 193); and Plaintiff's Motions for Summary Judgment (Dkt. Nos. 155; 178). Pursuant to 28 U.S.C. §636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge. For the reasons set forth below, the undersigned recommends Defendants' Motion for Summary Judgment be granted and Plaintiff's Motions for Summary Judgment be denied.

---

[1] The Court dismissed Hannon from this action on August 18, 2024, after finding the deadline for service had expired and proper service is unlikely to be accomplished for this defendant. (Dkt. Nos. 117; 128.)

[2] In their Motion for Summary Judgment, Defendants assert that the correct spelling of this individual's last name is Dittrich rather than Ditrrich. (Dkt. No. 193 at 1.)

## BACKGROUND

### A.    General Background

This civil action arises out of Plaintiff's arrest for armed robbery at a Walmart Supercenter in Mount Pleasant, South Carolina on or about June 27, 2021. Plaintiff filed the instant action on January 18, 2023, alleging claims of illegal search and seizure, unlawful arrest, and denial of due process in violation of the Fourth and Fourteenth Amendments. (Dkt. No. 1.) Plaintiff filed an unverified Amended Complaint on April 14, 2023.[3] (Dkt. No. 18.) On November 16, 2024, the District Judge dismissed Plaintiff's claims for equitable relief and indicated Plaintiff could proceed only on his "Fourth Amendment claim for monetary damages." (Dkt. No. 35.)

As the record shows, Plaintiff has chosen voluntarily to limit the scope of his claims in this action. More specifically, on August 5, 2024, Plaintiff filed a discovery motion stating, *inter alia*, he is "not challenging his arrest at this time that was conducted at the Walmart store on [the] night of June 27, 2021." (Dkt. No. 119 at 6.) On August 8, 2024, the undersigned issued an order acknowledging "there is some confusion as to how Plaintiff characterizes his claims in this action," and asking Plaintiff to clarify whether he "solely challenges the seizure and confiscation of tools from his car." (Dkt. No. 120 at 7–8.)

Plaintiff filed a response on August 19, 2024, stating he "solely challenges the seizure and confiscation of tools claiming the Defendants deprived him of Fourth Amendment right of the U.S. Constitution. However, Plaintiff must refer to the arrest of Plaintiff at the Walmart store on [the] night of June [27], 2021 in order to prove his claim of Fourth Amendment violation by Defendants." (Dkt. No. 131 at 1.) While Plaintiff states that he "is not challenging his arrest at this time," he also states that "in order to prove his claim of Fourth Amendment violation by

---

[3] "A complaint is 'verified' if it is 'signed, sworn, and submitted under penalty of perjury.'" *Goodman v. Diggs*, 986 F.3d 493, 495 (4th Cir. 2021) (quoting *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020)).

Defendants," he will need "to show the Court that there was never any probable cause to seize Plaintiff's personal property from [his] vehicle and implement such property" in the indictment "as evidence to an armed robbery with deadly weapons charge." (*Id.*) Plaintiff emphasized that he "is bringing his § 1983 claim under the deprivation of his Fourth Amendment right of the United States Constitution." (Dkt. No. 131-2 at 1.)

Based on Plaintiff's response, the Court issued an Order on August 26, 2024, finding that "this court has subject matter jurisdiction to address Plaintiff's claim that the seizure of his tools violates his Fourth Amendment rights under § 1983." (Dkt. No. 138.) In this Order, the Court took

> judicial notice that Plaintiff recently filed another civil action in this court alleging additional constitutional violations based on his same June 27, 2021 arrest for armed robbery. The Court has authorized service on the Defendants in that case, which includes the named Defendants in this action. *See Coffy, Sr. v. Richards et al* 2:24-cv-04369-DCN-MGB. Because Plaintiff now has two pending civil actions arising from this arrest, the undersigned clarifies that the instant action will address only Plaintiff's § 1983 claim for the unlawful seizure of his tools. While there may be some overlap in the facts and discovery of the two actions, the newly filed action is broader in scope and alleges other constitutional violations stemming from Plaintiff's arrest.

(Dkt. No. 138 at 4.)

On September 30, 2024, Plaintiff filed a Motion for Summary Judgment. (Dkt. No. 155.) He filed another Motion for Summary Judgment on October 24, 2024. (Dkt. No. 178.) On November 27, 2024, Defendants filed their Motion for Summary Judgment and Response in Opposition to Plaintiff's Motions for Summary Judgment.[4] (Dkt. No. 193.) On December 2, 2024, this Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to Defendants' Motion. (Dkt. No. 195.) Plaintiff filed a response in opposition on December 9, 2024, to which Defendants filed a reply on December 12, 2024. (Dkt. Nos. 197;

---

[4] Defendants were granted an extension of time to respond to Plaintiff's dispositive motions. (Dkt. No. 179.)

199.) Plaintiff filed a sur-reply on December 26, 2024. (Dkt. No. 200.) The Motions have been fully briefed and are ripe for review.

### B.     Evidentiary Record

In support of their Motion for Summary Judgment, Defendants rely on their personal sworn affidavits as well as sworn affidavits from third parties; inventory records from the Mount Pleasant Police Department ("MPPD"); MPPD General Order # 92-0325/O-43, "Vehicle Towing and Impounding; and MMPD General Order # 95-0428/O-55, "Search and Seizure Without a Warrant." In support of his Motions for Summary Judgment, Plaintiff offers a sworn affidavit from his criminal defense counsel. Plaintiff has also provided incident reports related to his underlying arrest.

#### 1.     Defendants' Affidavit Testimony

Defendants Kevin Herbst, Lee Dittrich, Robert Blaschke, and Douglas Richards were MPPD employees during the time period relevant to this case. They have provided affidavit testimony, which states the following. Defendant Officer Herbst responded to Walmart at approximately 10:30pm on June 27, 2021, "in reference to an armed robbery in progress." (Dkt. Nos. 193-1 at 1; 193-2 at 1.) Upon his arrival, Herbst, "encountered other officers conducting a felony stop on who [he] later identified as [Plaintiff] Marlin Coffy in the parking lot of the McDonalds that is near the Walmart." (Dkt. No. 193-1 at 1.) Herbst "placed handcuffs on Marlin Coffy and placed him in the back of a patrol vehicle at which time he informed [Herbst] that his name was 'Rico Coffy.'" (*Id*.) After an hour of questioning, Herbst "determine[d] that 'Rico' was actually Marlin Elrico Coffy." (*Id*. at 2.)

At that point, Herbst read Plaintiff his Miranda rights. In response to Herbst's questions, Plaintiff responded he was "by myself." (*Id.*) Plaintiff stated "he was coming from Walmart and

he left Walmart after individuals were following him around the store including the store's manager and loss prevention officers." (*Id*.) "When [Herbst] asked Marlin Coffy if he had a valid South Carolina driver's license, he said 'no.'" (*Id*.) Herbst "heard Officer Hannan ask Marlin Coffy if the car would come back to him as the owner, and Marlin Coffy responded by stating, 'no, it's going to come back to somebody else, my friend, my brother' but Marlin Coffy refused to provide Officer Hannan with his brother's name." (*Id*.) Herbst "then performed a search of the Kia Soul's license plate in the SCDMV data base and the results showed that Linda Legare Berry was the registered owner of the Kia Soul." (*Id*.) When Herbst asked if Plaintiff's brother's name was Linda, "Marlin Coffy stated, 'Linda? No, no, no, that's who he bought the car from.'" (*Id*.) Plaintiff "informed [Herbst] that [the car] belongs to his brother and stated that, 'about a week ago, he bought that car on James or Johns Island from a white lady that runs a farm.'" (*Id*. at 3.)

When Herbst "mentioned to Marlin Coffy that [he] observed items in the trunk of the Kia Soul," Plaintiff "stated that those items had 'nothing to do with what [sic] coming out of Walmart, not tonight." (*Id*.) Plaintiff "further stated that the items were from Walmart but that they were paid for two days ago." (*Id*.) Herbst "heard Officer Hannan ask Marlin Coffy, 'so that's your brother's stuff,'" and he "heard Marlin Coffy rely, 'yes.'" (*Id*.) "Marlin Coffy then told Officer Hannan and [Herbst] that he did not know if there was anything inside the Kia Soul that 'ain't supposed to be in there' and that the vehicle belonged to a friend but he was not 'at liberty' to give us the friend's name." (*Id*.)

Herbst avers that during this time, he "heard one of the officers state on the radio that the Walmart video footage showed Marlin Coffy's brother casually walk out and away from Walmart after pulling a handgun 'like he was waiting for the brother to come pick him up.'" (*Id*.) Marlin Coffy then stated, "I ain't done nothing but drive in that car right there' and 'there ain't nothing

wrong with the car, except I ain't got a license.'" (*Id.*) Herbst avers that Plaintiff's statements, as recounted in Herbst's affidavit, "were made in the presence of [Herbst] and Officer Hannan during Marlin Coffy's detention but prior to his arrest and were captured on [Herbst's] body camera." (*Id.*) Two hours after Herbst arrived on the scene, he "heard Officer Hannan inform Marlin Coffy that he was being charged with armed robbery." (*Id.* at 4.) Herbst avers that he "was not responsible for charging Marlin Coffy or [his brother] Michael Coffy or obtaining any warrants related to this incident." (*Id.*) Herbst further avers that he "did not perform a search of the Kia Soul or remove any items from the Kia Soul at any time while on scene." (*Id.*)

Defendants Sargeant Blaschke, Officer Dittrich, and Field Training Officer Richards also responded to the armed robbery incident on June 27, 2021. Blaschke avers that when he arrived "at the scene, [he] set up a perimeter near the Walmart . . . while other officers searched for a suspect who was later identified as Michael Coffy." (Dkt. No. 193-2 at 1.) Officers Dittrich and Richards similarly "set up a perimeter." (Dkt. Nos. 173-2 at 1; 193-3 at 1.) These Defendants were "advised that other officers located" Michael Coffy. (Dkt. Nos. 173-2 at 1; 193-2 at 1; 193-3 at 1.) At that point, Richards responded to the location where he observed Michael Coffy on the ground in handcuffs and Richards "helped him to his feet before reading him his Miranda rights." (Dkt. No. 173-2 at 1.) During his "search of Michael Coffy incident to arrest," Richards "discovered the title to a Kia Soul in Michael Coffy's wallet, and the title designated an individual named Linda Berry as the owner." (*Id.* at 2.)

Dittrich also responded to the location where he observed Michael Coffy being handcuffed and searched. (Dkt. No. 193-3 at 2.) Dittrich "observed a K-9 officer discover a camouflage bucket hat that matched the description of the hat worn by one of the suspects as well as a handgun in the area where Michael Coffy was located." (*Id.* at 2.) Dittrich then "transported Michael Coffy a short

distance to the location of Officer Herbst who was tasked with transporting Michael Coffy to the Charleston County Detention Center." (*Id.*) Blachske avers that by the time he "responded to the location, Michael Coffy had already been arrested and placed in the back of a patrol vehicle." (Dkt. No. 193-2 at 2.)

Richards avers that after searching Michael Coffy, he "then responded to the location of the suspect vehicle, a white Kia Soul that was parked in a nearby McDonald's parking lot." (Dkt. No. 173-2 at 2.) At that point, "[p]ursuant to MPPD policies and procedures, [Richards] called a third-party tow company called Irvine's to tow the suspect vehicle from the McDonald's parking lot because the driver, Marlin Coffy, had been placed under arrest. The McDonald's parking lot was private property and the vehicle therefore needed to be towed upon the driver's arrest." (*Id.*) Richards avers that he "conducted an inventory of the vehicle prior pursuant to MPPD policies and procedures" prior to the vehicle being towed. (*Id.*) Richards avers that "during [his] inventory of the vehicle, [he] was not searching for evidence related to the crime that was reported to officers nor did [he] find any such evidence." (*Id.*) Richards avers that he "located two cell phones and multiple tool sets" and the "tool sets appeared to be new and unopened." (*Id.*)

According to Richards, "while on scene, Officer Hannan informed [Richards] of his belief that the tools in the vehicle were not stolen from Walmart." (*Id.*) Richards avers that he "removed the new, unopened tool sets from the vehicle for the purpose of safekeeping these items prior to the vehicle being towed." (*Id.* at 3.) "[A]t the time that [Richards] removed the items from the vehicle during the inventory, [he] did not believe that the tools were in any way involved in the incident that officers were investigating." (*Id.*) Richards avers that "the items that [he] removed from the vehicle were submitted into the evidence room at MPPD for safekeeping only until the owner could claim them." (*Id.*)

Defendants Richards, Blaschke, and Dittrich aver that they did not see or speak with Plaintiff during this incident and they were not involved in Plaintiff's arrest. (Dkt. Nos. 173-2 at 3; 193-2 at 2; 193-3 at 2.) Blaschke and Dittrich further aver that they "did not perform a search of the suspect vehicle or remove any items from the vehicle." (Dkt. Nos. 193-2 at 2; 193-3 at 2.) Richards, Blaschke, and Dittrich aver that they "had no involvement in the prosecution of Michael Coffy or Marlin Coffy for any charges related to this incident and [they] did not have any knowledge of any exculpatory evidence related to the charges." (Dkt. Nos. 173-2 at 3; 193-2 at 2; 193-3 at 2.)

### 2.  Third Party Affidavit Testimony

Defendants have submitted an affidavit from third party, Brian Frances, who was a Field Training Officer for the MPPD at all times relevant to this action. (Dkt. No. 173-1 at 1.) Frances avers that he responded to the armed robbery incident on June 27, 2021. (*Id.*) According to Frances, "while en route to the scene, [he] heard a call over the radio that the suspect vehicle was a white Kia Soul." (*Id.*) Frances then "observed a white Kia Soul in the parking lot of the McDonalds which was in the same shopping center as Walmart." (*Id.*) Frances "observed a man subsequently identified as Marlin Coffy exit the vehicle." (*Id.*) According to Frances, he "exited [his] patrol vehicle and asked Marlin Coffy, 'Is that your white car right there?' Marlin Coffy responded 'that's my brothers.' Marlin Coffy further stated that his brother was at Walmart." (*Id.* at 2.) Frances avers that he did not "search or remove any items from the Kia Soul" while on the scene. (*Id.*) He further avers that "former MPPD Officer Michael Hannan was responsible for the scene because the Walmart was in his assigned patrol district at the time of the incident." (*Id.*)

Defendants have also submitted an affidavit from third party, Pat Carter, who was a Captain and the Operations Bureau Commander for MPPD at all times relevant to this action.[5] (Dkt. No. 193-4 at 1.) Carter avers that, "according to the MPPD incident reports," after arriving on the scene,

> officers were informed that one of the two suspects left the store in a white Kia Soul bearing SC license plate number SZBI 76. Officers put out a BOLO for this vehicle and Officer Brian Frances encountered the vehicle in the parking lot of a nearby McDonalds. Officer Frances observed that the vehicle was being driven by Marlin Coffy. Marlin Coffy informed officers that his brother was still at the Walmart, and officers conducted a show-up with Walmart's loss prevention to confirm that Marlin Coffy was one of the two suspects in the armed robbery.

(*Id.* at 2.) Attached to Carter's affidavit, and referenced in his testimony, is the Property and Evidence Report and Towed Vehicle Inventory Record, both completed by Officer Michael Hannon on June 28, 2021. (Dkt. Nos. 193-4 at 2, 5–7.) Hannon is "no longer employed by MPPD." (*Id.* at 2.) The Towed Vehicle Inventory Record documents Linda Legare Berry as the registered owner of white 2010 Kia Soul driven by Plaintiff immediately prior to his arrest. (*Id.* at 7.) Carter avers "it is MPPD policy to obtain the identity of the owner of vehicles suspected of being used in the commission of crimes by running the vehicle's VIN through the South Carolina DMV database." (*Id.* at 2.)

He further avers "it is MPPD policy to inventory a vehicle that was driven by an arrested suspect to document dangerous or valuable items inside of the vehicle, and all valuable items will be removed from the vehicle for safekeeping prior to the vehicle being towed." (*Id.* at 3.) According to Carter, his "review of the evidence shows that the MPPD policy for inventorying vehicles was followed in this case, and the items listed in the Property and Evidence Report,

---

[5] In his response brief, Plaintiff objects to "Pat Carter['s] affidavit being used due to he is a third party and not a named defendant nor named as part of discovery by Defendants." (Dkt. No. 197 at 8.) Defendants' reply brief does not respond to Plaintiff's assertion. Regardless, because this case can be resolved without relying on Mr. Carter's affidavit, the undersigned does not address the admissibility of this affidavit.

including several tool sets, were removed for safekeeping due to the value of the items." (*Id.*.) Carter avers that the removed items "were stored in the evidence department at MPPD for safekeeping" and that "these items cannot be released to Marlin Coffy because the owner of these items is designated as Michael Coffy and MPPD has not reviewed any documents or proof of ownership to dispute this designation." (*Id.* at 3–4.)

Defendants have also submitted an affidavit from third party, Linda Legare Berry, wherein she describes the sale of her 2010 Kia Soul "in the Summer of 2021" and her subsequent interactions with Plaintiff. (Dkt. No. 193-5 at 1.) More specifically, Berry avers that "two large men came to [her] home to purchase the Kia Soul" shortly after she listed it for sale, and she "do[es] not know the name of either" of those men. (*Id.*) "[S]hortly after [Berry] sold the Kia Soul, [she] received a letter for Irvine's towing company stating that they were in possession of the Kia Soul and that the vehicle was still registered in my name." (*Id.*) Berry "did not respond to the letter or pick up the Kia Soul." (*Id.*) Berry avers that she later received mail from Plaintiff on two occasions, asking her to "sign a piece of paper that stated [Berry] sold the Kia Soul to [Plaintiff]." (*Id.* at 2.) Berry avers that "when [she] signed these documents, [she] was not aware that [Plaintiff] was involved in a lawsuit against police officers, and [she] did not know that he intended to use [her] signature as evidence." (*Id.*) According to Berry, despite signing "the paper stating that [she] sold the Kia Soul to [Plaintiff]," she does "not know the identity of the individual [she] sold the vehicle to, and" she does "not believe that [she] would even be able to recognize the individual that [she] sold the Kia Soul to." (*Id.*)

Plaintiff has submitted an affidavit from third party, Dana S. Fields, Plaintiff's court appointed attorney for the indictment arising from Plaintiff's underlying arrest.[6] (Dkt. No. 197-1

---

[6] While this affidavit is captioned with information from a different case previously filed by Plaintiff, *see* Case No. 2:22-cv-3100-BHH, this appears to be a scrivener's error. The affidavit is dated September 17, 2024, almost two years

at 4–6.) Fields avers that she "write[s] this affidavit at the request of Mr. Marlin Coffy who wishes [her] to only attest to matters that" she is "aware of pertaining to items seized from his vehicle." (*Id*. at 4.) In her affidavit, Fields refers to an unidentified "report" related to Plaintiff's criminal case that documents certain "items were taken out of the vehicle before being towed for evidence." (*Id*.) According to Fields, this report "reflects the items were submitted into evidence along with a disc with items and that the items were taken during an inventory of the vehicle and were located in the back luggage compartment along with a black LG cell phone and black Samsung cell phone." (*Id.* at 5.) Fields avers that "the report" and "the complainant's statement" do not mention "Wal-Mart alleging any of the listed items as taken from its store []or that any of these items were listed as stolen through NCIC or other verifiable or even unverifiable means." (*Id*.) She continues, "[t]here is no mention that law enforcement learned the items were taken without permission from anywhere and there were never any charges related to these items alleged or brought against Mr. Marlin Coffy." (*Id*.) Fields avers that Plaintiff's charges related to the incident were dismissed and that "none of the listed items have been returned to Mr. Marlin Coffy." (*Id*. at 5–6.)

### 3.    Incident Reports

The record also includes partial incident reports submitted by Plaintiff. (Dkt. No. 209-1.) Relevant here, a Supplement Incident Report completed by Brian Frances on June 28, 2021 states that after "respond[ing] to Oakland Market for an armed robbery that had just occurred," Frances "arrived in the area and observed a white Kia Soul pulling into a parking space at the Oakland Market McDonald's." (*Id*. at 4.) Frances "observed a black male exit the vehicle and start walking

---

after Case No. -3100 was administratively closed. Additionally, the affidavit was never filed in Case No. -3310. Regardless, Defendants do not object to the admissibility of this affidavit and the undersigned finds no basis to strike it from the record. *Cf. McGovern v. Deutsche Post Glob. Mail, Ltd*., No. JFM-04-0060, 2004 WL 1764088, at *11 (D. Md. Aug. 4, 2004) ("Sworn deposition testimony taken in a different case is admissible on summary judgment so long as the depositions were made on personal knowledge and set forth facts that were admissible in evidence.").

to the McDonald's." (*Id*.) Frances "stopped [his] car, got out, and called out to him." (*Id*.) Frances "asked him if the white Kia Soul was his, he said it was." (*Id*.) Frances "asked him what he was doing, he replied that his brother was at Wal-Mart." (*Id*.) Only the first page of Frances's "Supplement Incident Report" is in the record, however, and a portion of his report is missing.

A "Narrative" contained in an Incident Report completed by "PFC Hannan" also describes the events on June 28, 2021. (*Id*. at 2.) Most relevant here, Hannan states that upon his arrival to McDonalds, he "ordered Marlin Coffy to the rear of FTO Frances patrol vehicle and PFC Herbst placed him into handcuffs without incident. FTO Frances informed [Hannan] that he asked Marlin Coffy if the white Kia Soul was his vehicle, which he confirmed it was and that his brother was at Walmart." (*Id*.) According to Hannan, "Marlin Coffy was then read his Miranda Warnings and stated he understood and would talk to officers. Marlin Coffy stated he was the driver of the Kia Soul in question." (*Id*.) Hannan reports that "FTO Frances then went back to Walmart and had loss prevention to a show-up, which loss prevention was able to positively ID Marlin Coffy as one of suspects connected with the armed robbery." (*Id*.)

Finally, in a Supplement Incident Report completed by Defendant Herbst on June 28, 2021, Herbst describes his interaction with Plaintiff, which is consistent with his affidavit testimony. (*Id*. at 3.) In his report, Herbst reports that "When asked if he [Plaintiff] was the driver of the vehicle, he stated, 'Yes.'" (*Id*.)

### 4.      Warrant Affidavit and Indictment

The record also includes Plaintiff's June 28, 2021 warrant affidavit for armed robbery and the indictment subsequently issued by the grand jury as to Plaintiff's armed robbery charge. (Dkt. Nos. 46-1; 73-1.) The affidavit states that here is probable cause to believe that Plaintiff committed armed robbery because, *inter alia*, Plaintiff and Michael Coffy were seen attempting to push out

shopping carts full of $1,156.95 of produce. (*Id*.) "[L]oss prevention were able to provide a tag of [redacted] on a white Kia Soul." (*Id*.) Officers located the Kia Soul and identified the driver as Plaintiff "who stated his brother was at Walmart." (*Id*.) Michael Coffy "brandished a black Shadow BB gun at a loss prevention officer when he exited the store from the automotive department and stated, 'what are you going to do, hero?'" (*Id*.) Michael Coffy was "located near the incident location, with the black Shadow BB gun which was located approximately 20 feet from [him]." (*Id*.) "Officers viewed video surveillance of both [Marlin Coffy and Michael Coffy] arrived together at Walmart and parked the while Kia Soul near the automotive section before the armed robbery occurred." (*Id*.) Neither the warrant affidavit nor the indictment reference the tools taken from the Kia Soul.

## STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Sedar v. Reston Town Center Property, LLC*, 988 F.3d 756, 763 (4th Cir. 2021) ("The requirement to construe the facts, and all reasonable inferences therefrom, in the light most favorable to the non-moving party does not require [the court] to accept

cherry-picked snippets of the testimony divorced from their context."). Conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

Because Plaintiff is representing himself, these standards must be applied while liberally construing his filings in this case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## DISCUSSION

In his Motions for Summary Judgment, Plaintiff argues that Defendants have failed to establish probable cause to search the Kia Soul and seize the tools found therein, and he is therefore entitled to summary judgment. (Dkt. Nos. 155; 178.) In their Motion for Summary Judgment, Defendants argue, *inter alia*: (1) Plaintiff lacks standing challenge the search of the Kia Soul or the seizure of property found therein; (2) the search and seizure was proper pursuant to the inventory exception to the warrant requirement; and (3) Defendants are entitled to qualified immunity. (Dkt. No. 193.)

The undersigned considers these arguments, below.

### A.     Standing

As discussed above, Plaintiff alleges that the seizure of his tools violated his Fourth Amendment rights under § 1983. The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The right to be free from an unreasonable search is personal in nature and cannot be vicariously asserted." *United States v.*

*Gray*, 491 F.3d 138, 144 (4th Cir. 2007) (citing *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978)). "[T]he protections of the Fourth Amendment are activated only when the state conducts a search or seizure in an area in which there is a 'constitutionally protected reasonable expectation of privacy.'" *United States v. Davis*, 690 F.3d 226, 241 (4th Cir. 2012) (quoting *New York v. Class*, 475 U.S. 106, 112 (1986)).

"Individuals have a reduced expectation of privacy in motor vehicles due to the high level of regulation to which they are subject." *United States v. Rusher*, 966 F.2d 868, 874 (4th Cir. 1992). A criminal defendant challenging a search has the burden to prove he had a reasonable expectation of privacy in the area to be searched. *Id.*; *see also Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980). "When attempting to determine whether a defendant has a reasonable expectation of privacy in property that is held by another, we consider such factors as 'whether that person claims an ownership or possessory interest in the property, and whether he has established a right or taken precautions to exclude others from the property.'" *United States v. Castellanos*, 716 F.3d 828, 833–34 (4th Cir. 2013) (quoting *United States v. Rusher*, 966 F.2d 868, 875 (4th Cir.1992)). When considering these factors, the Court focuses on the criminal defendant's established connection to the property at the time the search was conducted. *See United States v. Ferebee*, 957 F.3d 406, 416 (4th Cir. 2020) (recognizing that reasonable expectation of privacy is determined as of the time of the search); *see also United States v. Jacobsen*, 466 U.S. 109, 115 (1984) ("The reasonableness of an official invasion of the citizen's privacy must be appraised on the basis of the facts as they existed at the time that the invasion occurred.").

Here, the record shows that on the night of Plaintiff's arrest: (1) Plaintiff was driving the Kia Soul but he did not have a valid driver's license; (2) the title to the Kia Soul was found in Michael Coffy's wallet; (3) the title identified an individual named Linda Berry as the owner of

the vehicle; and (4) Plaintiff told Defendant Herbst that the vehicle and the "stuff" inside belonged to his brother. While there is a factual dispute as to whether Plaintiff told Officer Brian Frances that the vehicle belonged to him when he was first apprehended (Dkt. No. 209-1 at 4), Plaintiff does not dispute Defendant Herbst's affidavit testimony that once Herbst ran a search of the Kia Soul's license plate showing that Berry was the vehicle's registered owner, Plaintiff stated his *brother* bought the car from Berry.

In sum, Plaintiff has not demonstrated a legal ownership or possessory interest in the vehicle. Plaintiff could not have lawfully possessed the vehicle at the time of its seizure because he did not have a valid license and therefore could not legally operate it. *See Stokes v. Harris*, No. 1:10-cv-935, 2014 WL 5149222, at *9 (M.D.N.C. Oct. 14, 2014) (finding the plaintiff lacked standing to assert Fourth Amendment violation based on search and seizure of vehicle where, "although Plaintiff was driving the car and appeared to assert ownership of the vehicle," the "title and registration of the vehicle were not in Plaintiff's name" and "Plaintiff's license was revoked"). Additionally, the record shows that after being questioned by several police officers, Plaintiff denied owning the vehicle. At that point, Plaintiff "disassociated himself from the [vehicle] and lost any legitimate expectation of privacy and the 'capacity' to challenge its subsequent treatment." *United States v. Ferebee*, 957 F.3d 406, 414 (4th Cir. 2020) (finding plaintiff "lost any expectation of privacy" at the moment he "told Officer Bensavage that the backpack was not his" and "the subsequent search therefore did not violate [plaintiff's] Fourth Amendment rights"); *United States v. Davis*, 782 F. App'x 246, 253 (4th Cir. 2019) (finding that defendant abandoned truck in driveway when he stated, "It's not my white box truck. I don't know anything about it."); *United States v. Lane*, No. 6:24-cr-00297-DCC-2, 2024 WL 5132187, at *5 (D.S.C. Dec. 17, 2024) ("Generally, suspects who deny ownership of property are unable to raise Fourth Amendment

violations because they have no reasonable expectation of privacy in that property.") (citing *Rawlings*, 448 U.S. at 104). Based on the foregoing, Plaintiff has not shown he had a reasonable expectation of privacy in the vehicle and the tools inside.[7]

### B.     Inventory Exception to the Warrant Requirement

Even assuming Plaintiff did have a reasonable expectation of privacy in the vehicle and tools inside, the vehicle inventory search was reasonably conducted under the Fourth Amendment. "Although the text of the Fourth Amendment does not specify when a search warrant must be obtained, this Court has inferred that a warrant must generally be secured." *Kentucky v. King*, 563 U.S. 452, 459 (2011). "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citations and internal quotation marks omitted). One exception to the warrant requirement is an inventory search. *See*, *e.g.*, *Wren v. United States*, 517 U.S. 806, 811–12, (1996); *United States v. Matthews*, 591 F.3d 230, 234 (4th Cir. 2009).

"An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to

---

[7] Here, the undersigned recognizes that on January 17, 2025, Michael J. Coffy submitted a letter to the Court stating "On the night of June 27, 2021, the 2010 White Kia Soul and the tools in it belonged to Marlin E. Coffy Sr." (Dkt. No. 206.) This letter is not a sworn statement and cannot be considered as evidence at summary judgment. *See Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) ("It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment."). Additionally, Defendants claim that this letter directly contradicts Michael Coffy's response to a request for admission served by Defendants Dittrich and Richards in Michael Coffy's case related to this incident, Case No. 2:24-cv-00786-BHH-WSB. (Dkt. No. 207.) More specifically, Defendants assert that in Case No. -00786, Michael Coffy admitted that he "owned the Kia Soul [he] arrived to Walmart in." (*Id*. at 1–2.) Regardless, even assuming the Kia Soul actually belonged to Plaintiff on June 27, 2021, the evidence shows that Plaintiff disassociated himself from the vehicle on the night of his arrest and he "lost any expectation of privacy at that moment." *Ferebee*, 957 F.3d at 414; *see also Davis*, 782 F. App'x at 253. Thus, Michael J. Coffy's letter is immaterial here.

protect against false claims of loss or damage." *Whren*, 517 U.S. at 811 n.1. Accordingly, "[t]he policies behind the warrant requirement are not implicated in an inventory search, nor is the related concept of probable cause." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987) (citations omitted). For the inventory search exception to apply, the search "must have 'be[en] conducted according to standardized criteria,' such as a uniform police department policy[,] and performed in good faith." *United States v. Matthews*, 591 F.3d 230, 235 (4th Cir. 2009) (quoting *Bertine*, 479 U.S. at 374 n.6 (1987)). Standardized uniform policies may be established by "reference to either written rules and regulations *or* testimony regarding standard practices." *United States v. Clarke*, 842 F.3d 288, 294 (4th Cir. 2016) (emphasis in original).

As noted above, Defendant Richards avers that he arranged for the Kia Soul to be towed after Plaintiffs arrest "[p]ursuant to MPPD policies and procedures." (Dkt. No. 173-2 at 2.) Indeed, MPPD General Order # 92-0325/O-43, "Vehicle Towing and Impounding" states that members of the MPPD "are authorized to have a vehicle towed" when, *inter alia*, "the driver of the vehicle is taken into custody by the police department and the vehicle would be left unattended." (Dkt. No. 193-4 at 9.) Richards avers he "conducted an inventory of the vehicle prior" to the vehicle being towed "pursuant to MPPD policies and procedures." (Dkt. No. 173-2 at 2.) Consistent with the procedures in MMPD General Order # 95-0428/O-55, "Search and Seizure Without a Warrant," Richards avers that he removed "the new, unopened tool sets from the vehicle" and submitted them "into the evidence room at MPPD for safekeeping only until the owner could claim them." (*Id.* at 3; Dkt. No. 193-4 at 15–16.) In sum, the record shows that Richards conducted an inventory search of the vehicle pursuant to the written policy of the MPPD, and, therefore, the inventory search was objectively reasonable.

While Plaintiff insists that the tools were "placed as evidence" in Plaintiff's criminal case, the record evidence does not support this assertion. (Dkt. No. 197 at 6.) In addition to Richards' testimony that he "did not believe that the tools were in any way involved" in the crime at issue (Dkt. No. 173-2 at 3), Plaintiff's arrest warrant and subsequent indictment do not mention the tools or otherwise implicate them as evidence. (Dkt. Nos. 46-1; 73-1.) In his briefing, Plaintiff points to the "Property and Evidence Report, "which shows that each of the tools were designated as "evidence" under the "hold as" category. (*Id.* at 2; Dkt. No. 193-4 at 5–6.) However, such a designation is merely consistent with Richards' testimony that the items were "submitted into the evidence room at MPPD for safekeeping."[8] (Dkt. No. 173-2 at 3.) Without more, Plaintiff has failed to demonstrate a genuine issue of material fact as to whether the inventory search was reasonable under the Fourth Amendment.

Based on the foregoing, the undersigned recommends Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment claim and further recommends that Plaintiff is not entitled to summary judgment on this claim.

Alternatively, because they are government officials, Defendants are entitled to qualified immunity from civil damages so long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In other words, Defendants are entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, because Plaintiff

---

[8] Additionally, Carter avers that "it is a standard MPPD procedure to designate items removed from a vehicle pursuant to inventory as 'evidence' when the owner of the items is unknown." (Dkt. No. 193-4 at 3.) However, even without Carter's testimony, the mere designation of the items "as evidence" does not indicate that the inventory search was unreasonable.

has not demonstrated that Defendants violated his constitutional rights, Defendants likewise are entitled to a finding of qualified immunity.[9] *See Stokes*, 2014 WL 5149222, at *9 ("Even if Plaintiff did have a legitimate expectation of privacy in the car, qualified immunity would apply. Because of the need to tow the vehicle from the scene due to its lack of insurance and unknown ownership status, an objectively reasonable officer would have believed Defendant Harris's actions were constitutionally permissible [in searching Plaintiff's vehicle]."); *Dunn v. Harrell*, No. 7:11-cv-02440-HMH, 2012 WL 3965043, at *8 (D.S.C. Aug. 20, 2012) (finding officer was entitled to qualified immunity because the vehicle inventory search was conducted pursuant to written policy and was therefore objectively reasonable), *adopted by*, 2012 WL 3964992 (D.S.C. Sept. 11, 2012).

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that Plaintiff's Motions for Summary Judgment (Dkt. No. 155; 178) be DENIED and Defendants' Motion for Summary Judgment (Dkt. No. 193) be GRANTED.

IT IS SO RECOMMENDED.

February 20, 2025
Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

---

[9] To the extent Plaintiff brings a separate § 1983 claim for the continued retention of his alleged tools, "the law is not clearly established" as to whether the continued retention of lawfully seized property violates a clearly established right under the Fourth Amendment. Accordingly, Defendants would be entitled to qualified immunity on any such claim. *See McClain v. Trendel*, No. 1:20-cv-695, 2021 WL 1227046, at *6 (M.D.N.C. Apr. 1, 2021) (finding defendants "would be entitled to qualified immunity" on claim that "the continued possession of [plaintiff's] property constitutes a separate violation of the Fourth Amendment.").

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).